Good morning, Your Honors. May it please the Court, Joseph S. Porta on behalf of the petitioner Aresha De Silva. Mr. De Silva is a native and citizen of Sri Lanka. He fears torture and death, and he has suffered grave problems, including being whipped with a chain. His problems all stemmed because he was a member of a youth group, and he was exposing drug dealers that were rampant in his neighborhood and corrupting the youth. I've argued and we've argued at the trial level, at the Board of Immigration Appeals level, that these actions are necessarily political by virtue of what they're doing. If I could analogize, I believe back when Reagan was running for office, Nancy Reagan had a Just Say No campaign, and I can't see that as being any less political. The petitioner here was found to be credible. He had an extremely documented asylum application with support letters from members of the Parliament of Sri Lanka, acknowledging that he was a political member. I believe the crux and the issue and why we're called for oral argument today is, was this, was he persecuted because of a political opinion? Was a political opinion imputed to him? I would argue that persecutors are hardly likely to provide the person being persecuted with a letter explaining in detail the exact reasons. The focus is just slightly different, and that is the persecution was by a drug dealer. Yes, Your Honor. I do acknowledge that it was the henchmen of a drug dealer that did constitute the persecution. However, these henchmen and the drug dealer, the record is replete with references to these individuals having ties to the government. Well, there is an indication that he was tied with some police who went to parties at his house. Correct. There's also indications in the record that the police were seen burning the bodies of his friends after they had complained to the police. With nothing to show any particular connection between the murder, which had happened before, and seeing them at the parking lot having found the bodies. I mean, the crux of this the police on account of his drug activities. Well, Your Honor, I would argue that the Respondent was found to be credible. He submitted evidence that's not refuted. That evidence points to a link between the government and these drug dealers that committed this harm. He had reported this harm that these drug dealers were committing directly to the government, and the government shooed him away. Within a two-week period, two of the associates — two of his friends that went to complain to the police were found brutally murdered, and half of their bodies burned so they could be identified. There is evidence in the record that is not refuted and credible, and by this circuit's law deemed true, that the police were somehow implicated in the burning of these bodies. This is a difficult case. This man fears death, and motives are very hard to pinpoint down. The Court has relayed this in the Borja case, which is cited in my brief. In Borja, it's — you have to draw reasonable inferences from what's in the record. So I would argue that the standard of review is substantial evidence compels whether the finding is that there's reasonable evidence to support this. I believe the immigration judge turned a blind eye to this evidence, acknowledged that it existed, and then basically went with his spin on it. On what do you rely on saying that the standard of review is substantial evidence? I rely on Elias Zacharias for that proposition, a Supreme Court case, and on many other cases. It's — I could argue technically that it could be a legal determination, because it's — but I don't think the case law supports that proposition. I do believe it's substantial evidence. If the Court would like to entertain the possibility of de novo, I think we wouldn't be here for argument right now. Continuing with that line, they have to draw reasonable inferences from this. I don't think there's any other inference that can be drawn. The government has recently filed a 28J letter indicating — citing the case of Molina Morales, and I would like to distinguish that a bit. Molina Morales, Mr. Molina's sister, babysat for a politician. That politician raped Mr. Molina's sister. Mr. Molina went with a priest to report it to the police, and then they killed Mr. Molina's sister, and he applied for asylum on that basis. Ereshia, in the instant matter, is a much differently situated petitioner. He was politically active. His family was politically active. He helped people with their campaigns. There's sites in the record, if I can give them to you, that — that he was basically having rallies and exposing this man's drug-dealing activities to the public in efforts to quell the drug-dealing that was going on in the community. I think, while relevant under some of the legal principles, I think Molina Morales is pretty much in opposite, factually. The petitioner here, he's afraid for his life. He's going to die. The people that did this are in cahoots with the government. The government's unwilling to do it. There's even record — there's even evidence in the record that the individual who perpetrated this harm, or who at least directed it — his name was Guerrero — that he was the right hand of the prime minister of Sri Lanka. I think once you get to that level of association with the government, and given the fact that he was politically vocal against these drug dealers as part of a youth group, a social group, a community group to foster certain beliefs, I can't see it being anything other than political opinion. And I think it's disingenuous to his claim to say that — that it's only purely retaliatory because he reported this man's activities to the police. I would like to cite one statement that Guerrero did say to him, that the respondent — I'm sorry, that the petitioner did say in court. That statement is that you — when he was being threatened after the people were burned, Guerrero called him and he says, you have all done too many things. He didn't say, you reported me to the police. He said, you have all done too many things. I don't believe any reasonable inference was drawn from that statement. It's difficult at this point in time, considering he's credible, he's not required to produce corroborating evidence, and given the fact that he's fearing persecution, to have him submit more than he already has in support of his claim. I would like to reserve the remainder of my time for rebuttal, please. Good morning. May it please the Court, Lindsay Chichester on behalf of the Attorney General. The Court should uphold the agency's determination in this case and deny the petition for review. The petitioner has not established persecution, whether past or a well-founded fear of persecution, on account of a protected ground. This Court held in Senga v. INS that it can't establish persecution on account of, simply by inference. Therefore, simply because this drug dealer may have been in cahoots with a few local police officers, it does not establish that he imputed a political opinion to the petitioner and sought to harm him on account of that political opinion. The petitioner has to prove something more than violence, plus a disparity of views. And in this case, what the IJ decided, and what was clear from the record, was that there was clear inference to be drawn, and it was a non-political motive. The non-political motive was this personal vendetta. The petitioner did not have any trouble until this drug dealer moved to town, and he did not have any problems until he reported this drug dealer to the police. And while it is laudable that the petitioner does not want drugs in his community, that in itself is not establishing an expression of political opinion, nor does it establish that any retaliation from that drug dealer is going to constitute persecution on account of an imputed political opinion. I can't help but think of those 1930 black and white gangster movies of ballots and bullets and so forth, and they talk about local governments that have been so infiltrated by the mob that you've got the protection rackets and the police guarding the mobsters and so forth. Does there come a point when resisting the crime organization amounts to resisting the incumbent government? I think in that instance, Your Honor, yes, there probably could come a point, but these facts don't present that issue. I think that would be a situation where you had systemic government corruption, where you could show that the entire local community, and even on up the line, would not protect this person. I think it's relevant that when the petitioner left Sri Lanka and came to the United States for nearly three years, he never sought asylum. And when asked by the trial attorney before the immigration judge why, he stated, my party was in power, which would really significantly limit any of his arguments that the entire government was going to persecute him or that in some way they were imputing a political opinion to him, to harm him. If he wasn't in fear then, and his fear later came only after he was beaten up by the drug dealer's henchman, it kind of goes back once again to that personal vendetta issue. Petitioner also has claimed that he was a whistleblower, and I don't think that the government's position is that that record and that line of cases can't be supported by the petitioner's facts as presented before the immigration judge, nor was the whistleblowing issue even presented to the immigration judge. The salient question with a whistleblowing case is whether or not you're directing something towards a government institution, or is it to somebody whose acts are aboriginal. The person that sought to harm the petitioner was a drug dealer. He sought to harm the drug dealer, the drug dealer sought to harm him specifically because he opposed the drug dealing in the community. It doesn't give rise to significant government corruption or anything systemic where it would support that line of cases. Therefore, substantial evidence supports the immigration judge's finding that it was petitioner's reporting of this criminal drug activity in his community that led to the harassment specifically by the drug dealer. When the petitioner testified, he said, Guerro, the drug dealer, seeks to harm me. Guerro, the drug dealer, seeks to harm me because I went to the police station and ratted him out. Guerro wished to remain free to commit some criminal behavior, and petitioner's opposition to that criminal behavior led to a personal vendetta. And while it's unfortunate that those events take place, it hasn't been established that it was on account of any political opinion the petitioner held or that was imputed to him. Therefore, a reasonable fact finder is not going to be concluded in this case or compelled to conclude that the persecution was on account of political opinion as is petitioner's burden. Therefore, the petition should be denied. Thank you. Okay. Thank you, Mr. Judge. Mr. Forda? I would like to respond to Judge Clifton's suggestion that at some point it does become an imputed political opinion because of the mob movies and the close ties. Here there's no question that Guerro was involved with the government. He did come to the United States for two and a half years. Prior to that, his friends had been killed. But the serious problems that Iresha had suffered happened upon his return to Sri Lanka. At a point in time when the UNP party was in power, who is the party that supported and protected Guerro, they killed his uncle. They murdered him. They killed two of his volunteers. That was prior to his departure. Then he was beat up, and he had to go into hiding. I don't, I'm at just a mental loss here. I don't see how this cannot be a political opinion. There is plenty of evidence. The immigration judge, even in his decision, this is cited in my brief, I just found it, was that, acknowledged that he became known in the community as a political activist. He acknowledged that. Then he closed a blind eye to it and decided to say this is purely retaliatory. I disagree. While I may have not, I represented Iresha at trial, and while I may not have used the words whistleblowing at trial, I do believe that argument was raised. It was raised in my closing. It was the bulk of the evidence was he reported these activities as part of his duties of being a youth organization leader and to foster their civic responsibility. I see that as being nothing other than political opinion. It's very hard to, it's, yes, I will agree with the government that part of this motive was completely retaliatory, but I don't think all of it was. And the case law in this circuit makes clear that in a mixed motive analysis, only part of it has to be, and that can be drawn from reasonable inferences. The record compels the conclusion that there are reasonable inferences supporting that this was on at least account of his imputed political opinion. How do you say the record compels the conclusion, that's essentially the standard that the government is arguing for in this case? That's the standard that I believe the government is arguing for, and that is applicable. And that's essentially what you say you have. Correct, Your Honor. Okay. I don't know if the Court has any further questions. I don't think so. Thank you very much for your argument. Thank you, Your Honor. The matter of this charge will be submitted. I will next hear argument in Siraj.
judges: Gibson, Rymer, Clifton